# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **H.R. and M.R.**

**No. 20-0434** (Harrison County 18-JA-46-1 and 18-JA-47-1)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.A., by counsel Dean Morgan, appeals the Circuit Court of Harrison County's February 18, 2020, order terminating her parental, custodial, and guardianship rights to H.R. and M.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jenna L. Robey, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that she failed to make substantial improvement during her improvement periods, in finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future, and in terminating her parental, custodial, and guardianship rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner and the father abused controlled substances and that M.R. tested positive for methamphetamine when she was born in December of 2017. The DHHR alleged that a safety plan was implemented following the child's birth due to the father's aggressive behaviors toward the DHHR workers who conducted the investigation. However, the parents later violated the safety plan when petitioner allowed the father unsupervised contact with the children while he was uncooperative with safety plan services and, therefore, not allowed to see the children. Further, after the initiation of the safety plan, petitioner was found "slumped over the wheel of a vehicle" at a gas pump in April of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

2018. Two days later, both petitioner and the father were found "passed out in a car". Petitioner waived her preliminary hearing.

In July of 2018, petitioner stipulated that she had a history of substance abuse that led to the neglect of her children. Petitioner admitted that she abused methamphetamine and Subutex, which was unprescribed and purchased "off the street," and that she exposed both children to her substance abuse. Accordingly, the circuit court adjudicated petitioner as an abusing parent. As part of her stipulation, petitioner agreed to address her parenting deficiencies and her substance abuse. She agreed to "intensive drug and alcohol treatment," random blood and urine testing, attend individual therapy, participate in parenting classes, maintain a clean and suitable residence, and to cease contact with "known felons, drug abusers[,] or persons with a [child protective services] history." In August of 2018, the circuit court granted petitioner a post-adjudicatory improvement period with those terms.

The guardian filed a motion to revoke petitioner's post-adjudicatory improvement period in December of 2018, and the circuit court held a hearing on the motion. The guardian presented testimony from petitioner's psychological evaluator, her DHHR case worker, and three service providers. Upon this testimony, the circuit court found petitioner "had done little to nothing towards completing her improvement period." The circuit court further found that petitioner was "not doing what she needs to do:" she continued to engage in inappropriate relationships and failed to maintain appropriate housing; she attended parenting and adult life skills classes "about half of the time, but could not apply what she was learning;" and she continued using controlled substances. Therefore, the circuit court revoked petitioner's post-adjudicatory improvement period. Nevertheless, the circuit court granted petitioner a three-month extension of her post-adjudicatory improvement period in February of 2019 and a six-month post-dispositional improvement period in July of 2019.

The circuit court held the final dispositional hearing in January of 2020. The DHHR presented petitioner's second forensic evaluation, the record of her drug screening results, the testimony of multiple service providers, and called petitioner to testify. Petitioner presented multiple exhibits related to her failed attempts to obtain appropriate housing as well as a letter from her current therapist. Ultimately, the circuit court found that petitioner failed to complete the terms of her improvement period. The court noted that, although petitioner participated in and completed parenting and adult life skills classes twice over the course of the proceedings, she "was not able to make substantial progress" in improving her parenting skills. The court further found that petitioner failed to obtain appropriate housing, despite being provided resources to do so for over a year. According to the circuit court, the DHHR provided petitioner thirty-eight Housing and Urban Development ("HUD") housing listings, yet she contacted only seventeen of the listings and did not "seriously start looking for appropriate housing until June" of 2019.

More concerning, the court found that petitioner began consuming alcohol during the course of the proceedings in violation of the terms of her improvement period. Although petitioner testified that she had a "glass of wine with dinner" on one occasion and denied other use, a dried blood spot test revealed petitioner's level of Phosphatidyethanol signified "binge drinking or frequent drinking." The circuit court further found that petitioner had not attended any substance abuse recovery programs, "such as Celebrate Recovery or NA/AA meetings in months," as

2

recommended in her parental fitness evaluation and had "essentially substituted her drug addiction for alcohol." Additionally, the court determined that petitioner failed to make progress in her supervised visitations with the children due, at least, in part, because she "refused additional visitations with her children that could have occurred on weekends due to her personal schedule." Petitioner also failed to provide the children with equal attention during the visitations, which "caused behavior outbursts and aggression by [H.R.]" and "fostered [his] resentment towards his sister [M.R.]" Finally, the circuit court noted that the DHHR also offered petitioner services focused on domestic violence. The court found that during meetings with the provider, petitioner acknowledged "some situations of domestic violence, which occurred in front of the children, but was unable to acknowledge the impact that witnessing the domestic violence had on her children." Further, at the dispositional hearing, petitioner "denied the existence of any domestic violence in her relationship with [the father]."

The circuit court concluded that "[d]espite the [DHHR] offering every available service to [petitioner], she failed to make substantial improvements" and, therefore, found that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children. Accordingly, the circuit court terminated petitioner's parental, custodial, and guardianship rights by its February 18, 2020, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The father's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption in their current placement.

On appeal, petitioner argues that the circuit court erred in finding that she failed to make significant progress in her improvement periods.[3] According to petitioner, the circuit court focused solely on "minor issues" and failed to consider petitioner's "ongoing compliance and success with the terms of the case plan." Petitioner emphasizes that she successfully completed parenting and adult life skills twice, attended counseling and therapy sessions, obtained appropriate housing, and severed ties to the children's abusive father. Petitioner argues that the circuit court overemphasized two minor issues from late 2018, when she missed two visitations with the children and made "inappropriate" comments regarding this case to them. Finally, petitioner asserts that she was not afforded an opportunity to "present evidence of her progress and improvements during the dispositional hearing." We find petitioner's argument on appeal misrepresents the record, and that she is entitled to no relief on appeal.

This Court has held that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Contrary to petitioner's argument that "the record lacks evidence to support [a finding that p]etitioner failed to make significant progress" in her improvement periods, the record on appeal clearly supports the circuit court's ultimate conclusion. The record contains the circuit court's orders and exhibits from the dispositional hearing, and none of these documents undermine the circuit court's factual findings. Moreover, petitioner provides no citations to many of her factual assertions. For example, she asserts that she attended Narcotics Anonymous and Alcoholics Anonymous meetings, but she provides no citation in opposition to the circuit court's finding that she had not attended those programs "in [the] months" prior to the dispositional hearing. Likewise, petitioner asserts that she

---

[3]At the outset, it should be noted that petitioner's brief fails to comply with our Rules of Appellate Procedure. Specifically, petitioner's brief contains numerous factual assertions without citations to the record on appeal in contravention of Rule 10(c)(7), which requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . . [and] must contain appropriate and specific citations to the record on appeal . . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that "[b]riefs with arguments that . . . do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Petitioner's failure to provide adequate citations to the record are more fully detailed herein.

obtained housing, but provides no citation to the record in support. Most importantly, petitioner asserts that she "remains sober," which is in clear contradiction to the record. The circuit court found that petitioner's dried blood spot test indicated that she engaged in "binge drinking or frequent drinking," which she denied, and further found that petitioner "essentially substituted her drug addiction for alcohol." Upon our review, we find the circuit court correctly determined that the petitioner failed to satisfy the conditions of her improvement periods and failed to make sufficient improvement in the context of all the circumstances to justify the return of her children.

Further, while petitioner contends that she was not afforded an opportunity to "present evidence of her progress and improvements during the dispositional hearing," the record reveals she was afforded a meaningful opportunity to be heard. Pursuant to West Virginia Code § 49-4-60(h), "the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." The circuit court's final dispositional order includes references that petitioner testified and submitted multiple exhibits as evidence. Additionally, the circuit court noted that "[a]ll counsel were given the opportunity to present evidence and cross-examine witnesses." Accordingly, petitioner received the procedural due process to which she was entitled, and no evidence in the record suggests otherwise.

Petitioner also argues that the circuit court erred in finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and in terminating her parental, custodial, and guardianship rights. According to petitioner, she "took advantage of the services offered to her and is fully equipped to properly parent her children." However, petitioner again provides no factual support for her argument, and we find she is entitled to no relief.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. Pursuant to West Virginia Code § 49-4-604(d)(2), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child[ren].

Here, the record supports a finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future as petitioner failed to respond to a reasonable family case plan. Petitioner was offered and participated in a litany of services over an aggregate of fifteen months of improvement periods, but, as the circuit court found, she "failed to make substantial improvements" to her parenting, even after completing the parenting and adult life skills classes twice. She also failed to obtain adequate housing, despite agreeing to do so as a term of her improvement periods. Although petitioner made some headway

5

on her substance abuse issues, she consumed alcohol in violation of the terms of her improvement period and "essentially substituted her drug addiction for alcohol." Finally, petitioner made little progress in visits with the children, in part, because she "refused additional visitations with her children that could have occurred on weekends due to her personal schedule." "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Based on petitioner's failure to make any substantial change after an extensive improvement period, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future.

Finally, petitioner argues that the circuit court erred in terminating her parental, custodial, and guardianship rights. She asserts that the circuit court's disposition required H.R. "to reside in the strange environment of foster care after being raised by [p]etitioner in a loving home with family the majority of his life." Likewise, she argues that the circuit court "depriv[ed] [M.R.] of the opportunity to grow up with her natural mother," which would "destroy[] the potential future benefit of the natural relationship between mother and daughter." Indeed, petitioner's argument centers on preserving the children's "potential for a relationship" with her. However, as there is no evidence that such a relationship would be in the children's best interest, we find no merit to petitioner's argument.

This Court has held that "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). Further,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the circuit court found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future, which we found to be fully supported by the record. Thus, for the near future, there is no reason to believe that petitioner's parenting would be anything less than abusive and neglectful. It is axiomatic that subjecting a child to further abuse and neglect would not be in the child's best interest. Furthermore,

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with

6

fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Accordingly, we find no error in the termination of petitioner's parental, custodial, and guardianship rights based on the circuit court's findings below.

To the extent that petitioner argues that the circuit court should have granted her post-termination visitation, we have held that

"When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). As with her other arguments, petitioner fails to provide any factual support that the children shared a close emotional bond with her, or that continued visitation would be in the children's best interests. Accordingly, we find petitioner is entitled to no relief on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 18, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

7